UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TODD C. PAYTON,<br><br>      **Plaintiff**,<br><br>      v.<br><br>WELLS FARGO BANK, N.A. AS<br>TRUSTEE FOR OPTION ONE<br>WOODBRIDGE LOAN TRUST 2003-2,<br>ASSET BACKED CERTIFICATES, SERIES<br>2003-2 AND AMERICAN HOME<br>MORTGAGE SERVICING, INC.,<br><br>      **Defendants**. | Civil Action No. 12-11540-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                   February 28, 2013

### I. Introduction

Plaintiff Todd C. Payton ("Payton") has brought suit against Wells Fargo Bank, N.A., as trustee for Option One Woodbridge Loan Trust 2003-2, Asset Backed Certificates, Series 2003-2 ("Wells Fargo") and American Home Mortgage Servicing, Inc. ("AHMSI") (collectively, the "Defendants"), asserting claims that arise out of a scheduled foreclosure sale of Payton's home. Payton has asserted claims of breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent misrepresentation and preliminary injunctive relief. Wells Fargo has moved to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(6). For the reasons set forth below, the Court GRANTS Wells Fargo's motion in part and DENIES the motion in part.

## II. Standard of Review

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a complaint or a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. Factual Allegations

Unless otherwise noted, the relevant facts are as alleged in the complaint.

Payton resides at 107 Howland St. in Dorchester, Massachusetts ("the Property"), which he purchased on April 14, 1998 as his primary residence. Compl. ¶¶ 5, 8. On October 25, 2002, Payton took out a new mortgage on the Property with Option One Mortgage Corporation in the amount of $320,000. Id. ¶ 9. On August 1, 2007, the mortgage on the Property was assigned to Wells Fargo. Id. ¶ 11. AHMSI is the servicer of this mortgage, id. ¶ 7, and entered into a

Servicer Participation Agreement ("SPA") with Fannie Mae under the Home Affordable Modification Program ("HAMP"). Ex. A, Pl. Opp. Payton made regularly scheduled payments on the mortgage starting on December 1, 2005, but later became delinquent because he lost his job. Compl. ¶¶ 12, 14. When Payton received notice that his account showed a default, he began "attempting to negotiate with AHMSI in order to work out a solution that would allow him to retain his home." Id. ¶ 16. Payton meets the threshold criteria to be considered for a loan modification under HAMP and has applied for a modification on multiple occasions. Id. ¶ 17. Although Payton submitted all of the required documentation and updated his application on a regular basis, he has been "re-routed," "hung up on" and his application has not received proper consideration for acceptance into the HAMP program. Id. ¶¶ 17–18. The Defendants scheduled a public auction of the Property on July 23, 2012. Id. ¶ 19. The foreclosure sale has been postponed and has not been rescheduled. Def. Mem. at 3, n.1; Pl. Opp. at 2.

**IV.   Procedural History**

On July 19, 2012, Payton filed the instant complaint in Suffolk County Superior Court asserting claims for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), intentional infliction of emotional distress (Count III) and negligent misrepresentation (Count IV). D. 1-1. Payton also seeks injunctive relief (Count V). Id. Wells Fargo removed the action to federal court. D. 1. Wells Fargo has now moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). D. 6. After a hearing on the motion to dismiss on February 27, 2013, the Court took the matter under advisement.

**V.     Discussion**

   **A.     Count I:  Breach of Contract**

In Count I, Payton alleges that the Defendants have executed "HAMP contracts" or SPAs with Fannie Mae[1] and that he is an intended third-party beneficiary under HAMP.  Compl. ¶¶ 24–25, 27; Pl. Opp. at 6.  Payton asserts a breach of contract claim on the basis that the Defendants "failed and/or delayed processing of [his] application for a HAMP loan modification" and therefore, did not fulfill their obligations under HAMP.  Compl. ¶¶ 25, 28.  However, "while it is true that the SPA is intended to benefit homeowners, it does not necessarily follow that the parties to the SPA intended to bestow legal rights upon homeowners." In re Mitchell, 476 B.R. 33, 54 (Bankr. D. Mass. 2012); see also Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 182 (D. Mass. 2011) (explaining that there is an "important difference between an intent to benefit borrowers and an intent to confer upon borrowers a right to enforce servicers' HAMP obligations").  "The prevailing view in this district and others is that defaulted mortgagors are not entitled to sue for HAMP violations as third-party beneficiaries under an agreement between the bank and the government absent a clear indication in the contract to the contrary."  Seidel v. Wells Fargo Bank, N.A., No. 12-10766-RWZ, 2012 WL 2571200, at *3 (D. Mass. July 3, 2012).  Accordingly, as a majority of federal courts have determined, there is no private right of action under HAMP.  Kirtz v. Wells Fargo Bank N.A., No. 12-10690-DJC, 2012 WL 5989705, at *3 (D. Mass. Nov. 29, 2012); see also McBride v. Am. Home Mortg. Servicing Inc., No. 11-10998-RWZ, 2012 WL 931247, at *3 (D. Mass. Mar. 19, 2012).  Since this Court concludes that Payton has no viable HAMP-based breach of contract claim, it grants Wells Fargo's motion to dismiss as to Count I.

---

[1] Payton clarifies in his opposition that he is referring to the SPA.  See Pl. Opp. at 2–9.

### B. Count II: Breach of the Covenant of Good Faith and Fair Dealing

In Count II, Payton alleges that the "Defendants' pursuit of foreclosure and title to the Plaintiff's home at a time when the Defendants are required to suspend foreclosure proceedings pending a HAMP evaluation is a breach of the covenant of good faith and fair dealing." Compl. ¶ 32. Every contract contains an implied covenant of good faith and fair dealing. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991). The covenant only "governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005). Payton does not specify in the complaint what contract he alleges gives rise to this claim, whether he is relying on the SPA or the mortgage contract. Compl. ¶¶ 30–31.

Payton cannot sustain a claim for breach of the covenant of good faith and fair dealing based upon a contract Wells Fargo allegedly entered into with Fannie Mae under HAMP because he is neither a party to the contract nor a third-party beneficiary of same. See Kirtz, 2012 WL 5989705, at *4; Seidel, 2012 WL 2571200, at *3.

Payton also cannot sustain this claim based upon the mortgage contract as he argues that he is doing in his opposition to the motion to dismiss. Pl. Opp. at 6. Payton argues that Wells Fargo "violated the implied covenant of good faith and reasonable diligence inherent in the power of sale in every mortgage contract in Massachusetts" by failing to consider him for a loan modification and for scheduling a foreclosure sale without this consideration. Id. at 6–7; Compl. ¶ 32. In Massachusetts, the power of sale, which "may be incorporated in any mortgage," authorizes the mortgagee, upon default of the mortgagor, to sell the property at public auction, "first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale." Mass. Gen. L. c. 183, § 21. "[T]he basic rule

of law applicable to the foreclosure of real estate mortgages is that 'a mortgagee in exercising a power of sale in a mortgage must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'" Seppala & Aho Const. Co., Inc. v. Petersen, 373 Mass. 316, 320 (1977) (quoting W. Roxbury Co-op. Bank v. Bowser, 324 Mass. 489, 492 (1949)).  However, Payton has not made any allegations that Wells Fargo has exercised the power of sale because the complaint is devoid of allegations that the Property has been sold at auction and the parties have reported to the Court that any foreclosure sale has been postponed.  Def. Mem. at 3, n.1; Pl. Opp. at 2; see Housman v. LBM Fin., LLC, 80 Mass. App. Ct. 213, 220–21 (2011) (noting the distinction "between notice requirements, compliance with which is required to successfully conduct a foreclosure by power of sale, and the exercise of the power of sale itself" and stating that "the power of sale is exercised at the time of the actual sale").  Because Wells Fargo has not yet exercised the power of sale, there cannot be any plausible claim that the mortgagee has failed to exercise such power in good faith or exercise reasonable diligence to protect the interests of the mortgagor.  Mackenzie v. Flagstar Bank, FSB, No. 11-12014-MBB, 2013 WL 139738, at *10 (D. Mass. Jan. 9, 2013) (holding that "it [was] not possible" for the defendant to have breached the duty of good faith and reasonable diligence associated with exercising a power of sale in a mortgage "[b]ecause a foreclosure sale has not yet taken place").[2]  Accordingly, the Court grants Wells Fargo's motion to dismiss as to Count II.

---

[2] Payton relies upon Teixeira v. Fed. Nat. Mortg. Ass'n, No. 10-11649-GAO, 2011 WL 3101811 (D. Mass. July 18, 2011), in support of his claim that Wells Fargo breached the duty of good faith and reasonable diligence.  The plaintiffs in that case claimed that the defendants breached the duty of good faith and reasonable diligence by failing to provide a new loan modification application, failing to formally postpone the foreclosure auction date pending consideration of the plaintiffs' application and by not holding a public foreclosure auction.  Teixeira, 2011 WL 3101811, at *1.  The court held that the plaintiffs pled sufficient facts to sustain their claim of breach of the duty of good faith and reasonable diligence.  Id. at *2.  However, that case is inapposite because a foreclosure sale occurred.  Id. at *1.  Furthermore, the court did not base its holding on the theory that Payton advances here.  Rather, the court based its holding on the

### C.     <u>Count III: Intentional Infliction of Emotional Distress</u>

Payton has asserted a claim for intentional infliction of emotional distress against Wells Fargo. To state a claim of intentional infliction of emotional distress under Massachusetts law, a plaintiff must allege:

> (1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

<u>Limone v. United States</u>, 579 F.3d 79, 94 (1st Cir. 2009) (quoting <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 144–45 (1976)). Conduct is "extreme and outrageous" if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Foley v. Polaroid Corp.</u>, 400 Mass. 82, 99 (1987) (quoting Restatement (Second) of Torts § 46, comment d (1965)) (internal quotation mark omitted). Recovery for a claim of intentional infliction of emotional distress generally "requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 195 (1st Cir. 1996) (quoting <u>Foley</u>, 400 Mass. at 99) (internal quotation marks omitted). "The standard for making a claim of intentional infliction of emotional distress is very high." <u>Id.</u>

---

allegation that the defendants did not hold a public foreclosure auction at the time and location it claims to have and therefore, the defendants "did not provide actual notice of the actual sale . . . and/or did not protect the plaintiffs' interests by securing a reasonable foreclosure price through a competitive, public auction," which is not the case here. <u>Id.</u> at *2.

Payton's allegations that Wells Fargo mishandled his HAMP application and scheduled a foreclosure while his application was pending do not meet this high standard. See Compl. ¶¶ 17–18, 20–21. Failure to consider a borrower for a mortgage modification has been held to not rise to the level of actionable conduct for a claim for intentional infliction of emotional distress. See Alpino v. JPMorgan Chase Bank, Nat'l Ass'n, No. 1:10-12040-PBS, 2011 WL 1564114, at *8 (D. Mass. Apr. 21, 2011) (holding that mortgagee's failure to consider mortgagor for a modification under HAMP and failure to operate an open and fair foreclosure sale were not grounds to state a claim for intentional infliction of emotional distress); see also Harvard Univ. v. Goldstein, No. 961020, 2000 WL 282537, at *2 (Mass. Super. Ct. Feb. 15, 2000) (noting that the "usage of the terms outrageous and extreme have become commonplace in today's society, however, as used by the Agis Court they mean more than 'annoyances, or even threats and petty oppressions'" (quoting Conway v. Smerling, 37 Mass. App. Ct. 1, 8 (1994))). Furthermore, Courts have recognized that "[w]hile 'home foreclosure is a terrible event and likely fraught with unique emotions and angst,' foreclosures, even ones that may involve improper conduct, do not readily go 'beyond all possible bounds of decency.'" Alvarez v. U.S. Bank N.A., No. 11-12324-FDS, 2012 WL 2394680, at *9 (D. Mass. June 22, 2012) (quoting Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 136 (D.N.H. 2012)). Accordingly, Payton does not allege conduct that is sufficiently outrageous to assert a plausible claim for intentional infliction of emotional distress and the Court grants Wells Fargo's motion to dismiss as to Count III.

### D.    Count IV:  Negligent Misrepresentation

To assert a claim for negligent misrepresentation in Massachusetts, as Payton does in Count IV, a plaintiff must allege that the defendant:

> (1) in the course of his business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary

>loss to those others (5) by their justifiable reliance on the information, and that he (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

Braunstein v. McCabe, 571 F.3d 108, 126 (1st Cir. 2009) (quoting Gossels v. Fleet Nat'l Bank, 453 Mass. 366, 902 (2009)) (internal quotation marks omitted). Payton alleges that the Defendants represented on numerous occasions that his loan modification requests were under consideration, but he did not receive proper consideration for his acceptance into the HAMP program as he was constantly re-routed and hung up on. Compl. ¶ 18. Payton further alleges that he "justifiably relied" on the misrepresentations that his "loan modification requests were under consideration" and the misrepresentations caused him to be denied "loss mitigation relief" and resulted in additional costs and fees to his account. Id. ¶¶ 40–42.

Wells Fargo argues that Payton's claim should be dismissed because the complaint "is devoid of any allegations that Wells Fargo as Trustee knew that its representation regarding the status of the Plaintiff's loan modification were false or that Wells Fargo as Trustee made the alleged misrepresentations with the purpose of inducing the Plaintiff to act thereon." Def. Mem. at 12 (internal quotation marks omitted). The complaint is devoid of these allegations, however, a claim of negligent misrepresentation does not require the plaintiff to plead the defendant's knowledge of the statement's falsity, Epstein v. C.R. Bard, Inc., No. 03-12297-RWZ, 2004 WL 1598912, at *3 (D. Mass. July 19, 2004), aff'd, 460 F.3d 183 (1st Cir. 2006), or that the "defendant actually intended to deceive the plaintiff." Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 60 n.25 (2004) (quoting Kitner v. CTW Transp., Inc., 53 Mass. App. Ct. 741, 749 (2002)) (internal quotation mark omitted).

Wells Fargo further argues that Payton has alleged only that he "justifiably relied" on the Defendants' misrepresentations, without identifying the actions taken in reasonable reliance on

those misrepresentations, and has thus failed to plead reliance on the alleged misrepresentations with particularity pursuant to Fed. R. Civ. P. 9(b). Def. Mem. at 12. Even assuming, however, that Rule 9(b) applied to Payton's complaint under the principle that Rule 9(b) reaches "claims where the core allegations effectively charge fraud," see N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009), the Rule does not require a plaintiff to plead reliance with particularity. Rather, "the specificity requirement extends only to the particulars of the allegedly misleading statement itself." Rodi v. S. N.E. Sch. Of Law, 389 F.3d 5, 15 (1st Cir. 2004); see also id. (noting that Rule 9(b)'s "heightened pleading standard is satisfied by an averment 'of the who, what, where, and when of the allegedly false or fraudulent representation'" (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004))). Consequently, Payton's complaint cannot run afoul of Rule 9(b) for failing to plead reliance with particularity.

Nevertheless, "justifiable reliance is integral to a claim for negligent misrepresentation," Marram, 442 Mass. at 59, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim that survives a motion to dismiss. Iqbal, 556 U.S. at 678. Payton does not offer facts in the complaint to support his legal conclusion that he "justifiably relied" on the Defendants' alleged misrepresentations regarding his loan modification applications; however, he argues in his opposition that he relied on the misrepresentations by foregoing other options, such as bankruptcy, to try to cure the arrears. See Pl. Opp. at 8. Leave to amend a complaint "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), so long as there is no adequate basis for denial such as "futility, bad faith, undue delay, or a dilatory motive on the movant's part." Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001). At oral argument, counsel for Wells

Fargo argued that Payton did in fact file for bankruptcy and therefore did not rely upon the alleged misrepresentations.  However, in response to the Court's inquiry, Payton's counsel agreed that Payton's allegations regarding reliance are broader than any allegation about foregoing bankruptcy and the Court cannot conclude at this juncture that it would be futile to allow Payton to amend this claim.  Accordingly, the Court grants Payton leave to amend the complaint to provide factual support for his legal assertion that he justifiably relied on the misrepresentations and the Court denies without prejudice Wells Fargo's motion to dismiss as to Count IV.

### E. Count V:  Preliminary Injunctive Relief

Count V of Payton's complaint seeks preliminary injunctive relief.  Compl. ¶¶ 43–46.  However, injunctive relief is not a stand-alone cause of action under Massachusetts or federal law.  See Wentworth Precious Metals, LLC v. City of Everett, No. 11-10909-DPW, 2013 WL 441094, at *15 (D. Mass. Feb. 4, 2013) (noting that "[a]n injunction is a remedy not a claim"); Diamond Phoenix Corp. v. Small, No. 05-79-P-H, 2005 WL 1530264, at *4 (D. Me. June 28, 2005) (noting that "[i]njunctive relief is just that, relief; it is not a separate cause of action"); Unitrode Corp. v. Linear Tech. Corp., No. 98-5983, 2000 WL 281688, at *5 (Mass. Super. Ct. Feb. 17, 2000) (dismissing a stand-alone count for injunctive relief because it "states a claim for a remedy, not a cause of action" and adds nothing to the complaint where injunctive relief is specified in the "prayers for relief" section of the complaint).  Thus, the Court grants Wells Fargo's motion to dismiss as to Count V.

## VI. Conclusion

Wells Fargo's motion is GRANTED in part and DENIED in part.  The Court DISMISSES all of Payton's claims except his claim for negligent misrepresentation, and as to that claim, ALLOWS Payton to amend his complaint within fourteen days of this Order.

**So ordered.**

/s/ Denise J. Casper
United States District Judge
